**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **DEDRA LORINE REYES** | § | |
| | § | |
| **V.** | § | **A-09-CA-872-LY** |
| | § | |
| **RICK THALER, Director,** | § | |
| **Texas Dept. of** | § | |
| **Criminal Justice-Correctional** | § | |
| **Institutions Division** | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

To:    THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. §636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates, as amended, effective December 1, 2002.

Before the Court are Petitioner's Application for Habeas Corpus Relief under 28 U.S.C. § 2254 (Document 1); Affidavit in Support (Document 8); Supplement to Petition for Writ of Habeas Corpus (Document 9); Affidavit in Support (Document 12); Respondent's Answer (Document 13); Petitioner's reply (Document 14); Petitioner's memorandum in support (Document 15); and Petitioner's supplemental memorandum (Document 20). Petitioner, represented by counsel, has paid the filing fee for her application. For the reasons set forth below, the undersigned finds that Petitioner's application for writ of habeas corpus should be denied.

## STATEMENT OF THE CASE

**A.      Petitioner's Criminal History**

According to Respondent, the Director has lawful and valid custody of Petitioner pursuant to a judgment and sentence of the 22nd Judicial District Court of Travis County, Texas, in cause number CR-04-476.  Petitioner was charged with injury to a child.  Petitioner entered a plea of guilty, was found guilty, and was sentenced to 27 years of imprisonment.

Petitioner's conviction was affirmed.  Reyes v. State, No. 03-07-00115-CR, 2008 WL 4603576 (Tex. App. – Austin 2008, no pet.).  Petitioner also challenged her conviction in a state application for habeas corpus relief.  On January 6, 2010, the Texas Court of Criminal Appeals denied the application without written order.  Ex parte Reyes, Appl. No. 73,186-01 at cover.

**B.      Factual Background**

Petitioner pleaded guilty to knowingly causing serious bodily injury to a child. See Tex. Penal Code Ann. § 22 .04(a)(1), (e) (West Supp. 2008).  Reyes, 2008 WL 4603576, at *1.  The trial court accepted the plea and, after a three-day punishment hearing, adjudged Petitioner guilty and imposed a 27-year prison sentence.  Id.  On appeal, Petitioner challenged the trial court's refusal to allow her to withdraw her guilty plea.  As explained by the appellate court:

> The injured child was Gabriella Morris.  Gabriella was born on December 1, 2003, the fourth child of Jody and Felipa Morris.  Gabriella had some health issues at birth due to Felipa's gestational diabetes, but the evidence reflects that she was, generally speaking, a normal, healthy infant.  In the spring of 2004, the Morrises arranged for appellant to babysit Gabriella two days a week.  Appellant was herself the mother of a daughter, Serenity Cruz, born May 1, 2002.
>
> Felipa left Gabriella with appellant on the morning of May 4, 2004, as she had been doing twice a week for about a month.  That afternoon, emergency medical technicians were dispatched to appellant's residence in response to a report that a child was not breathing.  They found Gabriella in distress.  The child was first taken

to the emergency room in San Marcos, then transferred to Children's Hospital in Austin. The medical testimony was that Gabriella had injuries commonly seen in shaken babies: bilateral retinal hemorrhages, subdural hematomas, and traumatic ischemic brain injury. Gabriella survived, but she was left with serious visual and developmental impairments for which she will need long-term medical, speech, and physical therapy.

Although appellant pleaded guilty, she testified at the punishment hearing that she did not shake or otherwise injure Gabriella. According to appellant, Gabriella was asleep when Felipa brought her that morning. Appellant said that this was unusual, that the child was usually awake when she arrived. According to appellant, Gabriella awoke at about 11:00 a.m. Appellant gave her a bottle, but she vomited and then fell back asleep. Appellant testified that when she next checked on Gabriella, the child "looked lifeless" and did not appear to be breathing.

The State's original indictment alleged that appellant intentionally and knowingly caused serious bodily injury to Gabriella Morris "by violently shaking her." The indictment was later amended to allege that appellant knowingly caused Gabriella serious bodily injury by shaking her with her hands, striking her with or against an unknown object, and failing to adequately supervise her. The amended indictment also alleged that appellant used her hands or an object unknown as a deadly weapon.

On September 25, 2006, appellant appeared with counsel, waived her right to trial by jury, and entered an unbargained plea of guilty to the amended indictment. In response to questions from the court, appellant stated that she had no hesitation in pleading guilty and was doing so because she was, in fact, guilty. Appellant told the court that she understood that there was no plea bargain and that the range of punishment was five years to life in prison and a fine of up to $10,000. In addition, appellant signed a written document containing the admonishments required by statute. See TEX. CODE CRIM. PROC. ANN. art. 26.13 (West Supp. 2008). This document also contained a stipulation of evidence in which appellant admitted all of the conduct alleged in the amended indictment, including the use of a deadly weapon. The trial court accepted appellant's plea, found that the stipulated evidence substantiated her guilt, and took the case under advisement. The cause was reset for a bench trial on punishment.

Appellant subsequently employed new counsel, who filed a motion to withdraw appellant's guilty plea on November 14, 2006, the day before the punishment hearing was set to begin. The court heard arguments on the motion the following day. Appellant's new counsel asserted, as he had in the written motion, that when appellant pleaded guilty, she was confused as to whether or not there was a plea bargain. Counsel argued that appellant "gained nothing" by pleading guilty and "didn't understand" the consequences of her actions.

> The court overruled the motion to withdraw the plea, but agreed to allow appellant to present further evidence in support of the motion during the punishment hearing. When appellant later testified, she said that she had been confused regarding the range of punishment. She testified that she had been told that the range was "five to life," but "when I arrived for my court date, I was told [by counsel] 20 to life. And so it changed dramatically for me." Appellant acknowledged that she had said that she understood the plea, but explained, "I just felt pressured. I didn't know what to do, I was confused."

Reyes, 2008 WL 4603576, at *1-2. The appellate court noted:

> A defendant may withdraw her guilty plea as a matter of right before judgment is pronounced or the case is taken under advisement. Saldana v. State, 150 S.W.3d 486, 490 (Tex. App.-Austin 2004, no pet.). But after the case has been taken under advisement, a defendant may withdraw her plea only with the trial court's permission, and the court's ruling denying permission will be overturned on appeal only if an abuse of discretion is shown. Id.

The appellate court determined Petitioner's assertion that she was confused regarding the applicable range of punishment or the existence of a plea bargain was contradicted by the record. Reyes, 2008 WL 4603576, at *2. The court explained that the trial court admonished Petitioner both orally and in writing as to the applicable range of punishment, and Petitioner assured the court that she understood and that she understood that there was no plea bargain. Id. The court held there was no basis for concluding that the trial court abused its discretion by overruling Petitioner's motion to withdraw her guilty plea. Id. at *3.

## C.    Petitioner's Grounds for Relief

In her sole ground for relief Petitioner challenges the voluntariness of her plea.

## D.    Exhaustion of State Court Remedies

Respondent does not contest that Petitioner has exhausted her state court remedies regarding the claims brought in this application. A review of the state court records submitted by Respondent shows that Petitioner has properly raised these claims in previous state court proceedings.

Respondent does, however, argue that Petitioner has not exhausted her state court remedies with respect to the affidavit of Dr. Sheldon Gross.  In this case Petitioner relies on the Gross Affidavit in support of her application for habeas corpus relief.  Petitioner did not provide the state court with the same affidavit, in which Dr. Gross concludes that the chronic subdural hematomas of the victim could have been there for several weeks or before Petitioner was involved as a babysitter.  Dr. Gross explains chronic subdural hematomas can rebleed spontaneously or with the least amount of trauma.  Dr. Gross further attests that the victim's retinal hemorrhages could have been there for days or weeks.

Under 28 U.S.C. § 2254(b), federal habeas petitioners must fully exhaust available state court remedies before proceeding in federal court.  "The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court."  Morris v. Dretke, 379 F.3d 199, 204 (5th Cir. 2004).  Affidavits presented for the first time in federal habeas proceedings may not contain new factual allegations and must supplement—as opposed to fundamentally alter—claims presented to the state court.  Id. at 204-05.  The Court must conduct a fact- and case-specific exhaustion inquiry to determine whether additional evidence fundamentally alters or merely supplements the state petition.  Id. at 205.  "If the petitioner presents material evidentiary support for the first time in federal court, then he has not exhausted his state remedies." Smith, 515 F.3d at 400 (citing Morris, 379 F.3d at 204-05).

In this case the Gross Affidavit is only marginally related to the voluntariness of Petitioner's plea.  In addition, Petitioner presented similar affidavit evidence in her state habeas review.  Accordingly, the Gross Affidavit did not fundamentally alter the state petition.

## DISCUSSION AND ANALYSIS

**A.      The Antiterrorism and Effective Death Penalty Act of 1996**

The AEDPA radically altered the standard of review by this Court in federal habeas corpus proceedings filed by state prisoners pursuant to Title 28 U.S.C. § 2254.   Under the AEDPA's standard of review, this Court cannot grant Petitioner federal habeas corpus relief in this cause in connection with any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, 28 U.S.C. § 2254(d)(1)-(2).

The "contrary to" requirement "refers to the holdings, as opposed to the dicta, of ... [the Supreme Court's] decisions as of the time of the relevant state-court decision." Dowthitt v. Johnson, 230 F.3d 733, 740 (5th Cir. 2000) (quoting (Terry) Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 1523 (2000)).   The inquiry into whether the decision was based on an "unreasonable determination of the facts" constrains a federal court in its habeas review due to the deference it must accord the state court.   See id.

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by ... [the Supreme Court] on a question of law or if the state court decides a case differently than ... [the Supreme Court] has on a set of materially indistinguishable facts.   Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from ... [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id. at 740-41.

6

Section 2254(d)(2) speaks to factual determinations made by the state courts.  See 28 U.S.C. § 2254(e)(1).   While we presume such determinations to be correct, the petitioner can rebut this presumption by clear and convincing evidence.   See id.  Absent an unreasonable determination in light of the record, we will give deference to the state court's fact findings.   See id. § 2254(d)(2). With these principles in mind, this Court must now turn to the issues raised by the pleadings in this cause.

**B.     Guilty Plea**

"To be valid, a guilty plea must be voluntary, knowing and intelligent. United States v. Washington, 480 F.3d 309, 315 (5th Cir. 2007).  The test for determining a guilty plea's validity is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."  North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct. 160 (1970).  A court assessing the validity of a plea must look to "all of the relevant circumstances surrounding it and consider such factors as whether there is evidence of factual guilt."  Matthew v. Johnson, 201 F.3d 353, 364-65 (5th Cir. 2000).  The defendant must also have notice of the charges against him, understand the constitutional protections that he has waived, and have advice from competent counsel.  Washington, 480 F.3d at 315 (citation omitted).  Furthermore, the defendant must be competent, and the plea must "not be the product of 'actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant' or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel."  Matthew, 201 F.3d at 365 (quoting Brady v. United States, 397 U.S. 742, 750, 90 S. Ct. 1463 (1962)).  The trial court must inform the defendant of the consequences of his plea, but "the defendant need only understand the direct consequences of the plea; he need not be made aware of

every consequence that, absent a plea of guilty, would not otherwise occur." United States v. Hernandez, 234 F.3d 252, 255 (5th Cir. 2000) (per curiam).

A guilty plea "and the ensuing conviction encompasses all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence." United States v. Broce, 488 U.S. 563, 569, 109 S. Ct. 757 (1989). A plea of guilty amounts to more than a mere confession; it is instead "an admission that [the defendant] committed the crime charged against him." Id. at 570. A voluntary guilty plea waives all non-jurisdictional defects in the proceedings below except claims of ineffective assistance of counsel relating to the voluntariness of the plea. United States v. Glinsey, 209 F.3d 386, 392 (5th Cir. 2000); Smith v. Estelle, 711 F.2d 677, 682 (5th Cir. 1983).

> When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann v. Richardson, 397 U.S. 759, 770-71, 90 S. Ct. 1441 (1970).

Tollett v. Henderson, 411 U.S. 258, 267, 93 S. Ct. 1602 (1973); see also U.S. v. Cothran, 302 F.3d 279, 285-86 (5th Cir. 2002) (holding "[a] plea of guilty admits all the elements of a formal criminal charge and waives all non-jurisdictional defects in the proceedings leading to conviction").

Petitioner claims, because she evinced some hesitancy during her plea, it was not voluntary. Fed. Writ. Pet. at 6; Memo. The transcript of the guilty plea hearing provides the following exchange:

THE COURT:          Ma'am, do you understand the charge against you?

THE DEFENDANT:  Yes, sir.

THE COURT:          How do you plead, "guilty" or "not guilty?"

THE DEFENDANT: Guilty.

THE COURT:          Are you pleading guilty because you are guilty?

THE DEFENDANT: Yes, sir.

THE COURT:          Do you have any hesitation in representing to the Court that you are, in fact, guilty?

THE DEFENDANT: Uh, yes.

MR. RUGELEY:      Do you hesitate?

THE DEFENDANT: Oh, no, sir.

2 RR 6.  Petitioner confirmed to the court that she had no hesitation.  After she pleaded guilty, the court asked her twice, after further admonishments, whether she wished to persist in her guilty plea. 3 RR 7.  Both times she answered in the affirmative.  Id.  Further, Petitioner signed written admonishments stating that she understood and waived the constitutional rights associated with a trial and that she was entering her guilty plea knowingly and voluntarily.  SHCR at 8-14.  Such attestation carries a strong presumption of verity.  Blackledge v. Allison, 431 U.S. 63, 74, 97 S. Ct. 1621 (1977).

If a challenged guilty plea is knowing, voluntary, and intelligent, it will be upheld on federal habeas review.  James v. Cain, 56 F.3d 662, 666 (5th Cir. 1995).  Although a defendant's attestation of voluntariness at the time of the plea is not an absolute bar to later contrary contentions, it places a heavy burden upon her.  United States v. Diaz, 733 F.2d 371, 373-74 (5th Cir. 1979).  She must show such a strong degree of misunderstanding, duress, or misrepresentation by the court, prosecutor, or her own counsel that her plea would become a constitutionally inadequate basis for

imprisonment. <u>Id.</u> (citing <u>Blackledge v. Allison</u>, 431 U.S. 63, 75, 97 S. Ct. 1621 (1977)).  A defendant's solemn declarations in open court are presumed true, and a defendant generally may not recant sworn testimony made at a plea proceeding. <u>United States v. Fuller</u>, 769 F.2d 1095, 1099 (5th Cir. 1985).

The totality of the circumstances in this case reflects that Petitioner had a clear understanding of the proceedings against her, the nature of the offense for which she was charged, and the consequences of entering her plea.  Petitioner has not overcome the presumption of verity accorded solemn declarations made in open court nor rebutted the findings and conclusions of the state appellate and habeas courts.  Based on this record, the Court finds that Petitioner has failed to show her entitlement to relief under the AEDPA standard.

## **RECOMMENDATION**

It is recommended that Petitioner's application for writ of habeas corpus be denied.

## **CERTIFICATE OF APPEALABILITY**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in <u>Slack v. McDaniel</u>, 529 U.S. 473, 484, 120 S. Ct. 1595 (2000).  In cases where a district court

rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id.

In this case, reasonable jurists could not debate the dismissal or denial of the Petitioner's section 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. Miller-El v. Cockrell, 537 U.S. 322, 327, 123 S. Ct. 1029 (2003) (citing Slack, 529 U.S. at 484). Accordingly, it is respectfully recommended that the Court shall not issue a certificate of appealability.

## OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. Battles v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the

district court.  See 28 U.S.C. § 636(b)(1)(C);  Thomas v. Arn, 474 U.S. 140, 150-153, 106 S. Ct. 466, 472-74 (1985);  Douglass v. United Servs. Auto. Assoc., 79 F.3d 1415 (5th Cir. 1996)(en banc).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 1st day of June, 2010.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE